ERNEST FEIGE ET AL. v. THE FIRST NATIONAL BANK OF EAST SAGINAW ET AL.

*Party wall—Defective construction of building.*

A, having put up a brick building, sold to the adjoining owner, B, a half interest in a side wall to be used as a party wall in a building which B was putting up. C was also building next beyond B, and the new buildings went up together as one. Their foundation was laid before the sale of the wall was made. After the new buildings were finished, A sued C for injuries resulting to A's building from alleged defects in the construction of C's. The trial judge charged that there could be no recovery if the defect was in this general foundation, nor unless it was in the foundation of a vault that was in C's building. The defense claimed that A's building was in the same condition before C's was erected as afterward. Verdict was for defendant. *Held* (1) that the instruction was too broad, as A and C had no contract relations which would preclude A from suing; and (2)

that as there was some evidence, though slight, that the injury was in part due to a defect in the foundation proper of C's building, the instruction could not be said to be harmless, on the ground that the verdict covered all defects.

Error to Saginaw.   (Gage, J.)   June 18.—Sept. 29.

CASE.   Plaintiffs bring error.   Reversed.

*Sweet & Flanders* for appellants.

*Wisner & Draper* for appellees.

COOLEY, C. J.   This is an action on the special case.   The facts are in substance as follows :

In the year 1872, the plaintiffs erected on Cass street in East Saginaw a three-story brick building, which they have since that time occupied as a furniture warehouse.

In 1874 the plaintiffs sold to one Fish the one undivided half part of the north wall of their building, to be used by Fish as a party wall, and Fish did so use it in the construction of a store of twenty feet front, which he erected in 1874–5.

While Fish was putting up his building the First National Bank of Saginaw erected one for its purposes, occupying the whole space between the Fish building and Genesee street. The foundations for both these buildings appear to have been laid before Fish purchased the half of the party wall, and the two went up together, and presented an appearance on Cass street of being one building. Each of the buildings was however under separate supervision in construction. The bank, for its purposes, constructed a very heavy vault, which was connected in foundation with its main building.

The substance of the plaintiffs' complaint is that the foundation of the bank building was greatly defective and insufficient ; that it was negligent to construct it as was done ; that by reason of the defective foundation the bank building settled greatly, the walls cracked and were thrown out of perpendicular, and the whole building pressed south upon the Fish building, causing that building to press against the building of the plaintiffs, crack its walls and throw them

out of perpendicular, break the glass in the windows and
otherwise injure the building. The defendants contended
and sought to satisfy the jury by evidence that the building
of the plaintiffs was substantially in the same condition before
the bank building was constructed that it is now, and conse-
quently could not have been injured by that building in any
manner. They also insisted that it fully appeared by the
evidence that plaintiffs knew all about the foundation which
had been prepared for the Fish and bank buildings before
they sold half of the party wall to Fish, and understood its
defects, but that by the sale they consented to the Fish and
bank buildings being attached to theirs, and consequently
were not now in position to be entitled to complain of any
injurious results following the erection of those buildings
which are traceable to the defective foundation.

On the trial of the case certain rulings of the judge on the
admission of evidence were excepted to, but without, as we
think, sufficient reason. As the decision upon none of these
rulings would have value as a precedent, we pass them with-
out further remark.

In submitting the case to the jury the judge said to them,
among other things :

"Now, at the time the Feige Bros. sold to Mr. Fish the
half of this party wall, they had seen the foundation of the
bank building and of the Fish building. They knew the
character of the soil, and they also knew the size of the
foundation, and the way in which it was put up. They tes-
tified that they had seen it and examined it. Now, they can
claim nothing here on account of that foundation, that is,
the foundation of the main building (I am not speaking of
the vault, but of the regular foundation), because they saw
that foundation, and with their eyes open made this contract,
and allowed this building to be tied to their building, and
therefore they can claim nothing of the foundation in and
of itself. Neither can they claim anything if their building
is affected by reason of the attachment of these buildings to
it,—that is, the attachment simply, because that they con-
tracted might be done when they sold one-half of the party
wall; and they can claim nothing if their building is affected
by the reason of the increase of height by reason of the Fish

building being higher than the Feige building, for that they permitted to be done. They contracted for that, so that, in order to find for the plaintiff in this cause, you must find that the injury to their building resulted from the defective foundation to the vault. I speak of this so you can keep it in mind."

This instruction assumes that the plaintiffs in selling to Fish, and thereby assenting to his making use of the wall as a party wall, assented also to the bank uniting with Fish in a party wall, and to all the consequences which would naturally follow from the two buildings being constructed together upon the foundation which had already been laid. But this was altogether too broad.

The plaintiffs entered into no contract relations with the bank, and were under no obligations to inquire into foundations which the bank had laid for its purposes. More than this: they had no business to interfere in any manner with the business of the bank, and any interference might have been resented as an impertinence. They might indeed have refused to sell to Fish unless he would agree to decline all connection between his building and that of the bank; but they had a right to assume that Fish would so decline unless the connection was made safe, and that the bank itself would be guilty of no negligence to their prejudice. There is some evidence in the record that the question of the sufficiency of the foundation was raised by them at the time, and that Mr. Judd who represented the bank in the construction, did not agree with the plaintiffs that there was any defect. But the plaintiffs never consented to be bound by Mr. Judd's judgment if it should prove erroneous and prejudicial; the bank took the risk of that, and not the plaintiffs. If the bank, either intentionally or through negligence, saw fit to construct a building defectively, its managers were bound at its peril to make sure that the defects did not result in injury to others.

It is contended in the brief for the defense that this instruction, if erroneous, can be seen from the record to have caused no injury, and therefore the judgment should not be

reversed by reason thereof. The argument, as we understand it, is that the real contest before the jury was whether the building of the plaintiffs was substantially in the same condition before the bank building was put up as it was afterwards, the defendants contending that it was and the plaintiffs denying it. But the defendants further insist that such evidence as the plaintiffs produced tended to show that if plaintiffs' building was injured in consequence of any defect in that of the bank, the injury was attributable to defective foundation of the vault, and not of the building proper ; and as the jury were told the defendants were responsible for any injury resulting from defect in the foundation of the vault, a verdict in their favor was in effect a verdict that plaintiffs had suffered no injury that was legally attributable to the defendants.

If there were no evidence in the case which would justify the plaintiffs in claiming before the jury that the defective foundation of the bank building proper caused at least some part of the injury of which they complain, the argument now made for the defense might be accepted as sound. But there was some such evidence, and the plaintiffs had a right to go to the jury upon it. Though it seems to have been somewhat weak, we cannot say it was worthless. And we cannot therefore with that certainty which we ought to feel to justify denying a new trial when a clear error is apparent, say that the error was without injury.

A new trial must be awarded.

CAMPBELL and SHERWOOD, JJ. concurred.